UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LM INSURANCE CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| PRO SERVICES, INC., | ) Case No. 2:23-cv-00802-SGC |
| | ) |
| Defendant/Third-Party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| A. NETO AGENCY, LLC, *et al.*, | ) |
| | ) |
| Third-Party Defendants. | ) |

## **MEMORANDUM OPINION AND ORDER**[1]

This matter presents claims arising from a workers' compensation insurance policy issued to the defendant, Pro Services, Inc. Presently pending are two motions filed by two third-party defendants, Farmers Group, Inc., and Farmers Insurance Exchange (together, the "Farmers Entities"): (1) a motion to dismiss Pro Services' Third-Party Complaint; and (2) a motion requesting that the court take judicial notice of certain facts in conjunction with the motion to dismiss. (Docs. 30, 31).[2] As explained below, both motions will be denied.

---

[1] The parties consented to magistrate judge jurisdiction under 28 U.S.C. § 636(c). (Docs. 9, 43).

[2] Citations to the record refer to the document and page numbers assigned by the court's CM/ECF document system and appear in the following format: (Doc. __ at __).

I.      BACKGROUND

LM Insurance Corporation ("Liberty Mutual") initiated this matter on June 21, 2023, by filing a complaint (the "Complaint") naming Pro Services as the sole defendant. (Doc. 1). Pro Services is a labor staffing company to which Liberty Mutual provided workers' compensation insurance from 2020 until 2022. The Complaint asserts a claim for breach of contract due to inaccurate information included in Pro Services' application for coverage. More specifically, the Complaint alleges Pro Services' application underreported: (1) the number of its employees; (2) the states in which it performed work; and (3) the types of work it performed. The Complaint asserts that because of these inaccuracies, Pro Services owes Liberty Mutual at least $432,000 in unpaid premiums. (*Id.* at 5-9).

After receiving leave of court, Pro Services filed a third-party complaint (the "Third-Party Complaint") on May 28, 2024. (Doc. 23).[3] As defendants, the Third-Party Complaint names Alberto Neto, the A. Neto Agency, LLC, and the Farmers Entities. In broad strokes, the Third-Party Complaint alleges the following facts: Pro Services hired Neto, an insurance agent, and his company to search the market and procure a competitive workers' compensation policy covering all of its

---

[3] The Third-Party Complaint was filed by Pro Services' substituted defense counsel after its original counsel was granted leave to withdraw. (*See* Docs. 16-20). Pro Services' substituted counsel's motion to withdraw—premised on a breakdown of the attorney-client relationship—was granted following the appearance of its current counsel. (Docs. 46-53).

2

employees. (*Id.* at 4, 10). The owner of Pro Services was unaware of the types of insurance the business needed, and English is not his first language. (*Id*. at 4). Accordingly, Pro Services relied on Neto to find the best policy to cover its needs for the lowest price, regardless of the identity of the insurer; Neto led Pro Services to believe he could and would do so. (*Id* at 4-6).

Unbeknownst to Pro Services, Neto was a captive agent at the time, limited to selling products offered by Farmers, which specializes in personal insurance. (*Id.* at 5). Instead of shopping for competitive policies, Neto applied through the Alabama Workers' Compensation Plan, an assigned-risk marketplace for entities unable to acquire workers' compensation insurance through traditional underwriting. (*Id.*at 6-7). To be eligible, the applicant must have been rejected by at least two private providers; Neto did not apply to private providers and, thus, did not satisfy this prerequisite. (*Id.* at 7). Premiums on policies procured through the Alabama Workers' Compensation Plan are higher than those charged for policies obtained through the voluntary market. (*Id.* at 7-8). Additionally, in completing and submitting Pro Services' application, Neto provided the inaccurate information forming the basis of Liberty Mutual's claims. (*Id.* at 5-7). The Third-Party Complaint alleges Neto was acting as an agent or employee for the Farmers Entities when he performed all of these deeds and that Neto and the Famers Entities received commissions as a result. (*Id.* at 4-5, 8, 11-14).

3

Based on the foregoing, the Third-Party Complaint asserts claims for: (1) negligent procurement of insurance against all third-party defendants; (2) breach of contract against all third-party defendants except Neto; and (3) negligent supervision against the Farmers Entities. (Doc. 23 at 10-15). Neto and the Neto Agency have answered the Third-Party Complaint. (Doc. 35). Meanwhile, the Farmers Entities filed the instant motion to dismiss pursuant to Rule 12(b)(6). (Doc. 30). Accompanying the motion to dismiss is a motion asking the court to take judicial notice of information appearing on a website maintained by the National Association of Insurance Commissioners ("NAIC"). (Doc. 31). Both motions are fully briefed and ripe for adjudication. (Docs. 41, 42, 44, 45).

## II.   STANDARD OF REVIEW

In considering a motion to dismiss, the court must accept the plaintiff's allegations as true and construe them in a light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012). Under Rule 12(b)(6), a district court should dismiss a complaint for failing to state a claim upon which relief can be granted "only when the plaintiff's factual allegations, if true, don't 'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1295 (11th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When determining whether the allegations of the complaint meet this standard, the court

must "view the complaint in the light most favorable to the plaintiff and accept all [his] well-pleaded facts as true." *Id.* (quoting *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007)).

## III.   DISCUSSION

The motion to dismiss relies in large part on facts which the Farmers Entities hope to establish via judicial notice. Accordingly, the motion for judicial notice will be addressed before turning to the motion to dismiss. But first, and although not challenged by any party, the court concludes it has subject matter jurisdiction—via diversity and supplemental jurisdiction—over the claims presented in this matter.

### A.   Subject Matter Jurisdiction

The Complaint sufficiently alleges federal diversity jurisdiction as to Liberty Mutual and Pro Services. Liberty Mutual is incorporated in Illinois and maintains a principal place of business in Massachusetts; it is a citizen of those states for purposes of diversity jurisdiction. 28 U.S.C. § 1332(c). (Doc. 1 at 1). Pro Services is an Alabama citizen because it is incorporated and has its principal place of business here. (*See id.*; Doc. 5 at 1; Doc. 23 at 1). Therefore, the original parties named in the Complaint are completely diverse. Because the $432,000 in claimed damages exceeds the $75,000 amount in controversy threshold, the court has federal diversity jurisdiction over the claims asserted in the Complaint.

Pro Services' Third-Party Complaint adds four additional parties. The Third-

Party Complaint invokes diversity jurisdiction exclusively and asserts complete diversity of citizenship, but these allegations are incomplete and probably incorrect. (Doc. 23 at 3). First, it appears Albert Neto and the Neto Agency share Alabama citizenship with Pro Services because Neto: (1) resides [4] in Alabama; and (2) is the sole member of the Neto Agency. (Doc. 23 at 2); *see Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.,* 374 F.3d 1020, 1022 (11th Cir. 2004) (an LLC acquires the citizenships of its members). There are also problems with the diversity allegations concerning Farmers Insurance Exchange.[5] However, the apparent lack of diversity between Neto, the Neto Agency, and Pro Services—and the insufficient allegations concerning the citizenship of Farmers Insurance Exchange—does not defeat federal subject matter jurisdiction here because the third-party claims "arise out of a common nucleus of operative fact" with the claims asserted in the

---

[4] The Third-Party Complaint merely alleges Neto's residence, not his citizenship. (Doc. 23 at 2). An individual's citizenship is determined by their domicile. *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002). Domicile is defined as residence within a state with the intent to remain there indefinitely. *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1341-42 (11th Cir. 2011). Accordingly, alleging an individual resides within a state is insufficient to show their citizenship there. *Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1269 (11th Cir. 2013).

[5] The Third-Party Complaint alleges Farmers Insurance Exchange is an interinsurance exchange organized under California law and owned by policyholders. (Doc. 23 at 2; *see* Doc. 30 at 3). The citizenship of Farmers Insurance Exchange is not alleged. Under California law, an interinsurance exchange is an unincorporated business organization; for the purposes of federal diversity jurisdiction, it takes on the citizenship of each of its members. *See Tran v. Farmers Grp. Inc.*, No. 17-3907, 2018 WL 2926152, at *3 (S.D.N.Y. June 11, 2018). However, the Third-Party Complaint does not allege the citizenships of Farmers Insurance Exchange's members. Meanwhile, and for what it's worth, Farmers Insurance Group is a citizen of Nevada and California, the states where it is incorporated and its headquarters are located, respectively. (Doc. 23 at 2).

Complaint. *See Parker v. Scrap Metal Processors, Inc.,* 468 F.3d 733, 743 (11th Cir. 2006). After enumerating exceptions inapplicable here, the statute governing supplemental jurisdiction provides:

> . . . in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a). Accordingly, the exercise of supplemental jurisdiction over Pro-Services' third-party claims is appropriate here. *See Auto-Owners Ins. Co. v. Morris*, 191 F. Supp. 3d 1302, 1306-07 (N.D. Ala. 2016).

B.  **Motion to Take Judicial Notice**

Under the *Federal Rules of Evidence*, a court:

> may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

FED. R. EVID. 201(b). The Eleventh Circuit has cautioned that taking "judicial notice of facts is, as a matter of evidence law, a highly limited process" because it "bypasses the safeguards which are involved with the usual process of proving facts by competent evidence." *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997). In *Shahar*, the movant sought to expand the record on appeal via judicial notice of newspaper accounts concerning the unofficial conduct of a party. In denying the

7

request, the Eleventh Circuit gave examples of items subject to judicial notice:

> (1) scientific facts: for instance, when does the sun rise or set; (2) matters of geography: for instance, what are the boundaries of a state; or (3) matters of political history: for instance, who was president in 1958.

*Id.*

The Farmers Entities ask the court to judicially notice the following facts. Regarding Neto, the motion seeks judicial notice that he: (1) is a licensed insurance producer under Alabama law; (2) is an appointed insurance agent for several insurers affiliated with Farmers, including Farmers Insurance Exchange; (3) is not an appointed insurance agent for Liberty Mutual; (4) is an appointed agent for several insurers which are not Farmers affiliates; but (5) is not an appointed insurance agent for Farmers Group. Regarding Farmers Insurance Exchange, the motion seeks judicial notice that it is licensed as an insurance company under Alabama law but is not licensed in Alabama as an insurance producer. Regarding Farmers Group, the motion seeks judicial notice that it is not licensed in Alabama as either an insurance company or insurance producer. (Doc. 31 at 2-4).

To support judicial notice of the foregoing, the Farmers Entities have attached documents printed from the NAIC website. (Docs. 31-1, 31-2).[6] The documents

---

[6] The Alabama Department of Insurance ("Alabama DOI") maintains a website with a function allowing visitors to search licensee information. Using that search function redirects the visitor to the NAIC website. *Available at* https://www.aldoi.gov/licensing/checkstatus.aspx.

reflect the license status for Neto and the Farmers Entities as of July 5, 2024. Because these facts are not generally known within this court's territorial jurisdiction, judicial notice is proper only if the facts are not subject to reasonable dispute because they can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(2).

The Farmers Entities contend the narrow standard articulated in *Shahar* applied in the unique facts of that case but is too limited for general application. (Doc. 45 at 2-4). Instead, the Farmers Entities argue *Bryant v. Avado Brand, Inc.*, 187 F.3d 1271 (11th Cir. 1999), describes a more liberal standard that should apply in the instant case. *Bryant* was a securities fraud case in which the plaintiffs alleged corporate officers made false statements to inflate the value of the corporation's stock. The defendants moved to dismiss, attaching the corporation's SEC filings as exhibits. The district court denied the motion to dismiss, rejecting the defendants' arguments that the SEC filings could be judicially noticed without converting the motion to dismiss to a motion for summary judgment. *Id.* at 1276. On appeal, the Eleventh Circuit ruled as a matter of first impression that the SEC filings could be judicially noticed on a motion to dismiss. *Id.* Specifically, the Eleventh Circuit held:

> . . . a court, when considering a motion to dismiss in a securities fraud case, may take judicial notice (for the purpose of determining what statements the documents contain and not to prove the truth of the documents' contents) of relevant public documents required to be filed with the SEC, and actually filed.

*Id.* at 1278.

The Farmers Entities contend the rationale of *Bryant* applies to a variety of publicly available records and allows this court to take judicial notice of the documents printed from the NAIC website. (Doc. 45 at 4-6). To be fair, *Bryant* does show that the scope of facts subject to judicial notice is not strictly limited to the narrow categories announced in *Shahar*. However, the Farmers Entities' interpretation of *Bryant* does not extend to the documents attached to their motion to dismiss. And even if the NAIC documents were subject to judicial notice, the facts included therein would not achieve dismissal of Pro Services' third-party claims. These conclusions are explained in turn.

First, the rationale that applied to the SEC filings in *Bryant* does not apply to documents from the NAIC website. In *Bryant*, the Eleventh Circuit found SEC filings were appropriate subjects for judicial notice because these documents are unquestionably accurate depictions of information reported by a particular company. 187 F.3d at 1277 ("the documents are required by law to be filed with the SEC, and no serious question as to their authenticity can exist") (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)). Here, the documents pulled from the NAIC website do not share the same hallmarks of trustworthiness inherent in SEC filings. As Pro Services notes, the most readily apparent problem is that the NAIC explicitly does not guarantee the veracity or authenticity of the information

on its website. (Doc. 41 at 4-6). In order to use the NAIC website search function, a user must agree to terms and conditions, among which are that the NAIC: (1) has no ownership or responsibility for the information maintained on the system; (2) "does not guarantee the truth, accuracy, adequacy, or completeness" of the information; and (3) "is not responsible for any errors or omissions . . .".[7] The Alabama DOI website contains a similar disclaimer.[8] It is reasonable to question the accuracy of information provided on a website which explicitly disavows any claim of veracity.[9]

Next, even if the documents from the NAIC website were subject to judicial notice, they could not be used to prove the truth of the information contained therein—precisely what the Farmers Entities are attempting. *See Bryant*, 187 F.3d at 1278. And even if the court took judicial notice of the facts contained in the documents from the NAIC website—and accepted those facts as true—they would

---

[7] *Available at* https://sbs.naic.org/solar-external-lookup/assets/TermsAndConditions.pdf; (*see also* Doc. 41 at 11).

[8] The Alabama DOI "does not warrant or represent this information is current, complete, or accurate." *Available at* https://www.aldoi.gov/disclaimer.aspx; (*see also* Doc. 41 at 12).

[9] The Farmers Entities cite to other cases in which courts have taken judicial notice of documents pulled from electronic sources. (Doc. 45 at 4-6). None of the electronic sources at issue in those cases suffer from the same risk of inaccuracy as the NAIC website. *See Univ. Exp., Inc. v. U.S. SEC*, 177 F. Appx. 52 (11th 2006) (complaint filed in Southern District of New York); *Motley v. Taylor*, 451 F. Supp. 3d 1251 (M.D. Ala. 2000) (Montgomery County District Court docket sheet); *Joe Hand Promotions v. Barber*, 540 F. Supp. 3d 1070 (M.D. Ala. 2021) (certificate from U.S. Copyright Office); *Glass v. City of Glencoe*, No. 17-0026-JEO, 2017 WL 1407477, *9, n.14 (N.D. Ala. Apr. 20, 2017) (licensee information from Alabama State Bar website); *Jackson v. U.S.*, No. 12-388, 2014 WL 5474132, *12, n.6 (M.D. Fla. Oct. 29, 2014) (same).

not shed any light on any third-party defendant during the relevant time frame. As noted by Pro Services, the facts in the NAIC documents are chronologically irrelevant. (*See* Doc. 41 at 3, n.1). The claims in this lawsuit arise from events that occurred between 2020 and 2022. However, the NAIC documents show licensing information as of July 4, 2024, and do not reveal any party's status during the earlier, relevant period.

For all of the foregoing reasons, the Farmers Entities' motion to take judicial notice is **DENIED**. (Doc. 31).

### C. Motion to Dismiss

The Third-Party Complaint asserts claims for negligent procurement, breach of contract, and negligent supervision; the first two claims are asserted vicariously against the Farmers Entities under the theory that Neto was their agent. The motion to dismiss attacks the basis for holding the Farmers Entities' vicariously liable, as well as whether Neto was acting within the scope of his employment vis-à-vis the negligent supervision claim. (Doc. 30). These attacks rely on overlapping factual predicates regarding: (1) Neto's submission of Pro Services' application through the Alabama Workers' Compensation Plan; and (2) Pro Services' eventual procurement of a Liberty Mutual—not Farmers—policy. (*Id.* at 7-12).

As an initial matter, the factual frameworks on which the Farmers Entities' arguments rely either mischaracterize or ignore the scope of Pro Services'

allegations. To be clear, the Third-Party Complaint concerns Neto's conduct throughout the application process, including his: (1) collection of incomplete and inaccurate information regarding Pro Services' insurance needs; and (2) failure to fulfill the conditions required to qualify for the assigned risk pool. The Third-Party Complaint also alleges Neto was acting on behalf of the Farmers Entities when he took these actions. The level of control, if any, the Farmers Entities exerted over Neto is a subject for discovery but cannot be decided under Rule 12(b)(6) on the basis of the arguments presented.

Having addressed this deficiency generally, the specific arguments regarding each of Pro Services' claims are discussed below.

    1.  **Negligent Procurement of Insurance**

The motion to dismiss contends Pro Services' vicarious liability theory fails because it cannot show an agency relationship between Neto and the Farmers Entities. (Doc. 30 at 7-10). The three arguments in support of this contention are addressed in turn.

First, the Farmers Entities note Neto's eventual procurement of the policy through the Alabama Workers' Compensation Plan. The motion relies on Alabama law differentiating between an insurance agent, who works for the insurer, and an insurance broker, who works on behalf of the insured. The Farmers Entities cite a single case, *Temploy, Inc. v. Nat'l Council on Compensation Ins.*, 650 F. Supp. 2d

1145, 1156 (S.D. Ala. 2009), for the proposition that an individual procuring insurance through the Alabama Workers' Compensation Plan is functioning as an insurance producer. (Doc. 30 at 9). Thus, the motion reasons, Neto was not working on behalf of the Farmers Entities when he procured the policy for Pro Services. (*Id.*). As noted above, the allegations in the Third-Party Complaint concern the entire application process. The precise relationship between Neto and the Farmers Entities can be explored via discovery, but dismissal on these grounds is premature under Rule 12(b)(6). Tellingly, the opinion in *Temploy* issued at summary judgment.

Next, the Farmers Entities rely on the allegation that Neto was a captive agent, forbidden from selling any non-Farmers products. (Doc. 30 at 9). Because Neto ultimately obtained workers' compensation coverage through a different insurer, the Farmers Entities reason he could not have been acting on their behalf. This argument fails for the same reasons discussed in the preceding paragraph. The Farmers Entities' third argument—that Neto was not their appointed agent—relies entirely on the facts proposed to be established by judicial notice. (Doc. 30 at 9). Because judicial notice is not appropriate here, further discussion of this argument is not required.

For these reasons, the motion to dismiss will be denied as to Pro Services' third-party claim for negligent procurement.

### 2. Breach of Contract

The Third-Party Complaint alleges Neto—on behalf of the Farmers Entities—contracted with Pro Services to shop for and procure appropriate, competitive workers' compensation insurance. The Farmers Entities move for dismissal on two grounds, the first of which—that neither entity is licensed as an insurance producer—relies entirely on facts proposed to be established through judicial notice. (Doc. 30 at 10). Because judicial notice of these facts is not appropriate, further discussion of this argument is unnecessary.

Next, the motion to dismiss again relies on the fact that Pro Services eventually procured a Liberty Mutual policy. (Doc. 30 at 10-11). The Farmers Entities contend a finding of agency is precluded in light of the Third-Party Complaint's allegation that Neto was forbidden to sell non-Farmers products. Again, this logic ignores the allegations concerning Neto's conduct—on behalf of Famers—prior to submitting the application.[10]

For these reasons, the motion to dismiss will be denied as to Pro Services' third-party claim for breach of contract.

### 3. Negligent Supervision

Finally, the Farmers Entities assert Neto was acting outside the scope of his

---

[10] To the extent this argument relies on facts to be established by judicial notice, it also fails on that basis. (*See* Doc. 30 at 11, n.4).

employment when he procured the Liberty Mutual policy for Pro Services. (Doc. 30 at 11-12). As such, the Farmers Entities contend they cannot be liable for negligent supervision. This argument relies on the same rationale presented with regard to the negligent procurement claim; it also fails here.

For these reasons, the motion to dismiss will be denied as to Pro Services' third-party claim for negligent supervision.

IV. **CONCLUSION**

For all of the foregoing reasons, the Farmers Entities' pending motions to dismiss and to take judicial notice are **DENIED**. (Docs. 30, 31).

**DONE** this 14th day of March, 2025.

/s/ Staci G. Cornelius
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE